## FOSTER v. UNITED STATES.

(Circuit Court of Appeals, Fourth Circuit. June 14, 1911.)

### No. 1,012.

CRIMINAL LAW (§§ 762, 863*)—TRIAL—INSTRUCTIONS INVADING PROVINCE OF JURY—OPINION AS TO GUILT OF DEFENDANT.

Although the trial judge in a federal court may express an opinion as to the weight of evidence in civil cases and as to the guilt of a defendant in criminal cases, yet the greatest caution should be used in the exercise of this power, and the jury should be left free and untrammeled in the determination of questions of fact which are to be passed on by them; and in no instance should the judge express an opinion as to the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
188 F.—20

guilt of a defendant after the case has been submitted to the jury, and they have reported their inability to agree.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1731, 2065–2067; Dec. Dig. §§ 762, 863.*]

In Error to the District Court of the United States for the Western District of Virginia, at Roanoke.

J. D. Foster was convicted of a criminal offense, and brings error. Reversed.

For opinion below, see 183 Fed. 626.

The plaintiff in error (defendant below) was indicted at the April, 1910, term of the United States District Court for the Western District of Virginia, at Danville, Va., under an indictment in pursuance of section 3296 of the Revised Statutes (U. S. Comp. St. 1901, p. 2136), which indictment contained two counts; the first charging that the defendant removed, aided and abetted in the removal of, certain distilled spirits to a place other than the distillery warehouse provided by law, and the second count charged that the defendant unlawfully concealed, and aided and abetted in the concealment of, certain distilled spirits. The defendant was also indicted at the same time under sections 3258, 3279, 3281, and 3242 of the Revised Statutes (pages 2112, 2126, 2127, 2094), charging him with illicit distilling. On this indictment, however, a verdict of not guilty was rendered by direction of the court. The defendant was tried upon the indictment under section 3296, and convicted on the first count thereof, which count charged removing, aiding and abetting in the removal of, distilled spirits. The evidence upon which this conviction was obtained was as follows: Shortly before Christmas of the year 1909, B. F. Stultz, deputy marshal, Floyd Gray, deputy collector, J. S. Shackelford, and T. J. Burnett left Martinsville in Henry County, Va., in a covered wagon and went in the direction of Patrick county for the purpose of making a raid. They passed the home of J. D. Foster, which is located in Henry county, and drove several miles further west towards the Patrick county line and continued until about dark, when they stopped by the side of the road and "took up camp." Stultz, Gray, and Burnett remained in the wagon, which had been stopped by the side of the road, and had a lighted lantern in the wagon at the time. Soon after they stopped, hearing a wagon coming from the rear, they turned the lantern down and J. D. Foster drove up in a one-horse wagon and stopped. As soon as he stopped he began a conversation with J. S. Shackelford, who had started a fire by the side of the road, in which Foster said to Shackelford: "I am a blockader, and I suppose you are," and further stated to Shackelford in the conversation: "I am going up in the mountains to get some whisky for Christmas, but will have none to sell; what I'll have will not be a drop in the bucket for my customers, but if you are here when I return I will give you a drink." Immediately after this conversation Foster drove on toward Patrick county and Stultz and Gray followed him. After following in the direction which Foster had gone for about three miles, Stultz and Gray found Foster's horse and the one-horse wagon standing tied in or near the road. They waited at the wagon for some time for Foster to return. In a short while they saw Jehu Scott and Frank Hairston coming through the brush toward the road carrying an unstamped barrel of whisky, the barrel being tied to a pole. Scott carrying one end of the pole and Hairston the other. Foster was walking behind the two, saying "gee and haw" as they were coming along. The barrel of whisky was placed by the side of the road and at that time Foster asked Scott and Hairston how much whisky they had made and if they were going to make any more. Afterwards Foster untied his horse and wagon and turned around in the road and brought it back to where the barrel of whisky had been placed. Foster got up in the wagon and was leaning over in the act of receiving the barrel into the wagon as Scott and Hairston were lifting it up when Officers Stultz and Gray ran up and made the arrests. Foster admitted that he had a conversation with Shackelford. Among other

things, he also testified: "That Jehu Scott and Frank Hairston owned a blockade distillery, and that he had no interest in it; that on his way he met Jehu Scott and Jehu told him that he had some whisky, and told him that he would give him his Christmas 'dram' if he would carry the whisky home for him, and he (Foster) agreed to do it. Then he drove on a half mile or more, and drove out on the side of the road and tied his horse, and took the runlet out and set it down near the wagon, and then I went with Scott to the distillery. Pretty soon Scott and Frank Hairston came along with a keg of whisky on a pole and carried it out to the road, within 30 or 40 feet from where the wagon was. I turned my wagon around and drove it near the barrel. We were talking about the whisky, and I was standing up in the wagon holding the horse. I was going to haul the barrel. Frank and Jehu were out on the side of the road in the dark where the whisky was. I think they were in the act of taking it up, but I couldn't exactly well see what they were doing. About that time the officers ran up and arrested us. I had nothing whatever to do with the whisky, and had not touched or carried it at all." The defendant was found guilty on the count charging him with removing, aiding and abetting in the removal of, distilled spirits or untax-paid whisky, and the judgment of the court was pronounced, and from this judgment this case comes here on writ of error.

R. H. Willis (Hairston, Hairston & Willis, on the brief), for plaintiff in error.

Barnes Gillespie, U. S. Atty. (Thomas J. Muncey, Asst. U. S. Atty., on the brief), for the United States.

Before PRITCHARD, Circuit Judge, and DAYTON and CONNOR, District Judges.

PRITCHARD, Circuit Judge (after stating the facts as above). There are several assignments of error, but we think that the fourth assignment is perhaps the most important, involving, as it does, the question as to the extent to which the court should go in expressing an opinion as to the weight of evidence, and also the further question as to whether, under any circumstances, the court should express an opinion as to the defendant's guilt after the jury has had under consideration the evidence, and at a time when they have failed to agree as to their verdict. In the case of Starr v. United States, 153 U. S. 624, 14 Sup. Ct. 923 (38 L. Ed. 841) Chief Justice Fuller, in speaking for the court, said:

"It is true that in the federal courts the rule that obtains is similar to that in the English courts, and the presiding judge may, if in his discretion he thinks proper, sum up the facts to the jury; and if no rule of law is incorrectly stated, and the matters of fact are ultimately submitted to the jury, it has been held that an expression of opinion upon the facts is not reviewable on error. Rucker v. Wheeler, 127 U. S. 85, 93 [8 Sup. Ct. 1142, 32 L. Ed. 102]; Lovejoy v. United States, 128 U. S. 171, 173 [9 Sup. Ct. 57, 32 L. Ed. 389]. But he should take care to separate the law from the facts, and leave the latter in unequivocal terms to the judgment of the jury as their true and peculiar province. McLanahan v. Universal Insurance Company, 1 Pet. 170, 182 [7 L. Ed. 98]. As the jurors are the triers of facts, expressions of opinion by the court should be so guarded as to leave the jury free in the exercise of their own judgments. They should be made distinctly to understand that the instruction is not given as to a point of law by which they are to be governed, but as a mere opinion as to the facts to which they should give no more weight than it was entitled to. Tracy v. Swartwout, 10 Pet. 80, 96 [9 L. Ed. 354]; Games v. Stiles, 14 Pet. 322 [10 L. Ed. 476]. The same rule prevails in the courts of many of the states, and in the charge in Commonwealth v. Selfridge, referred to by the court below, these views were ex-

pressed upon the subject: 'As to the evidence, I have no intention to interfere with its just and natural operation upon your minds. I hold it the privilege of the jury to ascertain the facts and that of the court to declare the law to be distinct and independent. Should I interfere with my opinion with the testimony in order to influence your minds to incline either way, I should certainly step out of the province of the judge into that of the advocate. All that I can see necessary and proper for me to do in this part of the cause is to call your attention to the points or facts on which the cause may turn, state the prominent testimony in the case which tends to establish or disprove these points, give you some rules by which you are to weigh the testimony, if a contrariety should have occurred, and leave you to form a decision according to your best judgment, without giving you to understand, if it can be avoided, what my opinion of the subject is. Where the inquiry is merely into matters of fact, or where the facts and law can be clearly discriminated, I should always wish the jury to leave the stand without being able to ascertain what the opinion of the court as to those facts may be, that their minds may be left entirely unprejudiced to weigh the testimony and settle the merits of the cause.' So the Supreme Court of Pennsylvania says: 'When there is sufficient evidence upon a given point to go to the jury, it is the duty of the judge to submit it calmly and impartially. And if the expression of an opinion upon such evidence becomes a matter of duty under the circumstances of the peculiar case, great care should be exercised that such expression should be so given as not to mislead, and especially that it should not be one-sided. The evidence, if stated at all, should be stated accurately, as well that which makes in favor of a party as that which makes against him; deductions and theories not warranted by the evidence should be studiously avoided. They can hardly fail to mislead the jury and work injustice.' Burke v. Maxwell, 81 Pa. St. 139, 153. See, also, 2 Thompson on Trials, §§ 2293, 2294, and cases cited. It is obvious that under any system of jury trials the influence of the trial judge on the jury is necessarily and properly of great weight, and that his lightest word or intimation is received with deference and may prove controlling. Hicks v. United States, 150 U. S. 442, 452 [14 Sup. Ct. 144, 37 L. Ed. 1137]. The circumstances of this case apparently aroused the indignation of the learned judge in an uncommon degree, and that indignation was expressed in terms which were not consistent with due regard to the right and duty of the jury to exercise an independent judgment in the premises, or with the circumspection and caution which should characterize judicial utterances."

While the decision of the lower court in the foregoing case was reversed because there was an abuse of this power by the court below, yet the court in that instance announced the rule that although while a judge of a federal court may, under proper conditions, express an opinion as to the guilt of a defendant, yet in the exercise of this power he should give a full and complete review of the evidence both for and against the defendant, and should be very careful not to say anything calculated to exert a controlling influence upon the minds of the jury in ultimately determining the facts which are alone to be passed upon by them.

In the case of United States v. Garst (C. C. A.) 180 Fed. 339, the question arose as to whether a judge after the jury had retired and had failed to agree could properly express an opinion as to the defendant's guilt. In that case Judge Keller, speaking for this court, said:

"That in the federal courts the judge may express his opinion as to the guilt or innocence of the accused, if such an expression of opinion is given to the jury with proper explanation that it has no binding force whatever, is well established, and we should be very reluctant to say that an expression of opinion so guarded was error. Yet at the same time we are of opinion that ordinarily, if it is thought proper in a given case to give the jury the benefit

of the court's opinion for what it may be worth, there would seem to be no good reason why such opinion should not be given in connection with the charge of the court and the instructions submitted, so that there should be no possible danger of its making more of an impression upon the mind of the jury than the court desired, or that it properly should make. If given in such a way and at such a time, we are persuaded that it could have no more weight with the jury than that properly accorded to the views of an intelligent, unprejudiced man, learned in the law and attentive to the evidence, and so given would never be accorded undue weight; but it is entirely possible that if that same jury has been considering the case patiently and has been unable to agree, and they are then called in by the judge of the court and told that he has reflected upon the case, and that in his opinion the defendant is guilty, and he marshals the reasons for his opinion, there is some danger that his opinion will exercise an influence which would not have been accorded to it had it been expressed along with the submission of the legal instructions and immediately in connection with the arguments of counsel; and this may, and, indeed, under such circumstances, is quite likely to be true, even though the court carefully endeavors to keep its influence within the bounds assigned to it by the approved practice of the federal courts."

We endeavored in that case to make it clear that under no circumstances should the trial judge express an opinion as to the guilt of the defendant after the jury had retired and at a time when they had failed to agree as to their verdict. In this case it appears from the defendant's bill of exceptions No. 5 that:

"After the jury had returned into the courtroom and stated to the court their inability to agree, and had been further instructed by the court, as set forth in defendant's bill of exceptions No. 4, and had again returned to their room to consider their verdict, the jury again returned to the courtroom and stated to the court that they were unable to agree."

Whereupon the court made the following statement to the jury:

"The practice in the federal courts permits the court to express to the jury his opinion of the guilt or innocence of the defendant. You are cautioned, however, that you are not bound by the opinion of the court, and that the ultimate decision of the case is for you. I am of the opinion that the evidence in this case shows that the defendant, Foster, after having agreed to haul the whisky, turned his wagon around for the purpose of receiving untaxpaid whisky, with the intent to remove the same, as charged in the indictment, and for this reason I am of the opinion that the evidence shows the defendant guilty in the count of the indictment charging him with aiding and abetting in the removal of untax-paid whisky, but you are again cautioned that you are not bound by the opinion of the court, and this is submitted to you for what you may think it worth."

After the foregoing statement, it appears that the jury retired to their room and in a short time brought in a verdict of "guilty." While it is true that the learned judge stated to the jury that they were not bound by any opinion he had expressed, yet we cannot escape the conclusion that, had it not been for the fact that the judge gave it as his opinion that the defendant was guilty, the jury would not have agreed and there would have been a mistrial. Once a jury has retired, as in this instance, and upon consideration of the facts the jurors are unable to agree as to their verdict, the slightest expression from the presiding judge as to the guilt or innocence of the defendant must necessarily have a controlling influence upon the minds of the jury; and this, in our judgment, is precisely what occurred in this case.

It should be borne in mind that the judges of the various state courts in this circuit are not permitted to express an opinion as to the weight of testimony, nor are they permitted to express an opinion as to the guilt of a defendant. Our people have become accustomed to this system, and as a consequence jurors attach great importance to any expression coming from the presiding judge, feeling, as they do, that it is only in exceptional cases that he expresses an opinion as to any matter that may be submitted to them, and when he does they feel that they are bound by the same. Under these circumstances an expression of opinion from a federal judge in this circuit necessarily carries more weight than would the opinion of a federal judge in a circuit where a different rule prevails in the state courts. While the learned judge who heard this case below employed language that clearly informed the jury that they were not bound by any expression that he may have made, nevertheless the circumstances surrounding the trial of this case are such as to impel us to the conclusion that the jury was influenced in a large measure by the opinion of the court. It may be that in many instances jurors refuse to find defendants guilty notwithstanding the fact that the evidence is such as to justify them in doing so, and thus permit those who are guilty to escape punishment. While this is to be deplored, yet the rule which leaves all questions of fact to be passed upon by the jury should never be relaxed or modified if the rights and liberties of the citizen are to be preserved. Notwithstanding the trial judge may express an opinion as to the weight of evidence in civil cases and as to the guilt of a prisoner in criminal cases, the greatest caution should be used in the exercise of this power, and the jury should be left free and untrammeled in the determination of questions of fact which are to be passed upon by them, and in no instance should the trial judge express an opinion as to the guilt of the defendant after the case has been submitted to the jury and at a time when they have failed to agree as to their verdict.

For the reasons stated, the judgment of the lower court is reversed, a new trial granted, and the case remanded, with instructions to proceed in accordance with the views herein expressed. Reversed.