### TAYLOR v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1912.)

No. 2,022.

1. CRIMINAL LAW (§ 814\*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.

Where federal officers gave money to an Indian, and directed him 'to purchase whisky therewith from defendant, if possible, but there was no evidence that the officers had any suspicion that defendant was engaged in the practice of selling liquor to Indians, an instruction that, if the officers were convinced that defendant was engaged in such practice, then there was ample ground for their conduct, and they should not be discredited on that account, though without such suspicion their conduct was reprehensible and would discredit them, was erroneous as inapplicable to the evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1979; Dec. Dig. § 814.\*]

2. WITNESSES (§ 367\*)—CREDIBILITY—GOVERNMENT OFFICERS—SUSPICION.

Where government officers gave money to an Indian, with instructions that he attempt to purchase liquor therewith from defendant, and a prosecution of defendant was subsequently based on an alleged sale of liquor to him, evidence that the officers entertained a suspicion that defendant was in the habit of selling liquor to the Indians did not bear on their credibility as witnesses.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1184, 1185; Dec. Dig. § 367.\*]

In Error to the District Court of the United States for the Eastern Division of the Eastern District of Washington.

Ed Taylor was convicted of selling liquor to an Indian, and he brings error. Reversed and remanded.

F. C. Robertson and Fred Miller, for plaintiff in error.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

ROSS, Circuit Judge. The plaintiff in error was indicted for and convicted of the crime of selling whisky to an Indian, and upon such conviction was adjudged by the court to be imprisoned in the penitentiary at McNeill's Island in the state of Washington for the period of two years at hard labor, and to pay a fine of $100 and the costs of the prosecution.

The sole point presented here relates to the instructions of the court below. The testimony in the case is comparatively .brief, and the substance of it may be shortly stated. That on the part of the government tended to show that an Indian named Moses Phillips, living on the Spokane Indian reservation, and under charge of the Indian agent there, was given, by two deputy special officers of the Department of the Interior, money belonging to the government, with which to buy whisky from the defendant, who was a barkeeper in a certain saloon in the town of Okanogan, state of Washington, and thereby secure evidence against him of a breach of the statute prohibiting the sale of such liquor to an Indian in the position of Phillips. The

evidence on the part of the government tended to show that the two special officers referred to met by appointment the Indian mentioned at Okanogan, and that Phillips, on the 20th of August, 1910, dressed in a blue suit and lumber jack boots, went about half past 3 in the afternoon of that day into the saloon and asked the defendant for a pint of whisky; that the defendant told him to go into a little closet in the back end of the saloon, which he did, and that the defendant then entered the closet with a pint bottle of whisky concealed under his apron, and handed it to the Indian, who paid for it, and that the latter then took it to one of the special officers and gave it to him; that the defendant told the Indian at the time that he could get all the whisky he wanted after dark; and that after 9 o'clock of the night of the day mentioned the defendant sold the Indian two pints and one quart of whisky, for which he paid the defendant—the defendant delivering the whisky to the Indian near a certain hitching post across the street from the saloon, which testimony of Phillips in respect to the sale and delivery near the hitching post was corroborated by that of the two special officers.

The testimony of the defendant was to the effect that he neither sold nor gave to the Indian any whisky, but, on the contrary, positively refused to sell or give him any when he came into the saloon, or at any other time, and made him go out of the saloon when he came there for it; that during the evening of the day mentioned he was not in the town of Okanogan, having gone, with a woman companion, between 6 and 7 o'clock, for a drive on the other side of the river, from which he did not return until between 11 and 12 o'clock that night; and the defendant also introduced the testimony of a number of witnesses to the effect that they saw him at different times while driving with that companion, at different hours during the evening and night at designated places along the road, and also the testimony of defendant's companion, who was a cook in a restaurant, and who corroborated all of his statements in respect to his absence from Okanogan and his return there about 11 o'clock that night, and the testimony of a young man to the effect that he took the place of the cook that evening between 6 and 7 o'clock, and that the defendant and his companion did not return until about 11 o'clock that night. There was other testimony given on behalf of the defendant tending to corroborate his testimony. There was, therefore, a sharp conflict in the evidence upon the vital question in the case. And, in view of the instruction complained of, it is proper to add that there was no testimony given upon the part of the government tending to show that its special officers referred to had any suspicion that the defendant Taylor was in the habit of violating the law in the respect indicated.

The instructions complained of are as follows:

"There is testimony tending to show that the government, through its agents, furnished money to this Indian to buy this whisky. Of course, if the government officers were convinced that this man was engaged in a practice of that kind, they were justified in using this means to detect it. If, on the other hand, they should give money to an Indian, and send him at large to buy whisky from whomsoever he might, whether that party had

been in the habit theretofore of selling whisky to Indians or not, their conduct would be reprehensible, and any jury would discredit their testimony; but, as I said before, if they were convinced that he was engaged in that practice, then there is ample warrant for their conduct, and you should not discredit them on that account."

The court having thereupon asked whether there were any objections to the instruction thus given, the following proceedings took place:

"Mr. Miller (counsel for defendant): The defendant excepts to that portion of the court's instructions which tells the jury that if the special agents were out looking after people whom they suspected of being in the habit of selling liquor to Indians, as being in the nature of a comment upon the evidence, and as indicating to the jury that they probably had an eye on Taylor, at the time they were making this investigation.

"The Court (to the jury): I gave you that instruction, gentlemen, solely as bearing upon the credibility of the witnesses. I am not intimating that he was engaged in that practice, and whether they indulged in that suspicion or not is no evidence of his guilt, but it is a fact that you have a right to take into consideration in measuring their conduct and credibility. You may now retire."

[1, 2] The court thus clearly instructed the jury that, if the special officers of the government entertained a suspicion that the defendant was engaged in the practice of selling whisky to Indians, they could consider that matter in measuring the credibility of those officers, whose testimony, as has been shown, was in direct conflict with that of the defendant and with a number of his witnesses. There was clear error in the instruction, first, because, as has been said, there was no testimony tending to show that the officers entertained any such suspicion, and, secondly, because no such suspicion on their part, if entertained, would bear upon their credibility as witnesses. See, upon the first reason stated for our decision, the cases of Beard v. United States, 158 U. S. 550, 558, 559, 15 Sup. Ct. 962, 39 L. Ed. 1086; Bird v. United States, 187 U. S. 118, 23 Sup. Ct. 42, 47 L. Ed. 100; Foster v. United States, 188 Fed. 305, 110 C. C. A. 283; Mullen v. United States, 106 Fed. 892, 46 C. C. A. 22.

The judgment is reversed, and the case remanded to the court below for a new trial.