## UNITED STATES v. BOOKBINDER.

(District Court, E. D. Pennsylvania. May 4, 1922.)

No. 78.

**1. Customs duties ⊕125—Concealing goods imported contrary to law is not limited to violations of customs laws.**

The offense of receiving and concealing goods imported contrary to law, denounced by Rev. St. § 3082 (Comp. St. § 5785), is not confined to goods imported contrary to the customs laws, but includes liquors imported contrary to the National Prohibition Act, unless superseded by that act.

**2. Customs duties ⊕121—Prohibition of possession does not supersede statute prohibiting "receiving" and "concealing."**

National Prohibition Act, tit. 2, § 3, prohibiting possession of intoxicating liquor, except as authorized by the act, but imposing no penalty, except the general penalty of section 29, did not impliedly repeal or supersede Rev. St. § 3082 (Comp. St. § 5785), prohibiting the receiving and concealing of goods imported contrary to law, since to receive means simply the act of taking, and to conceal means to hide or withdraw from observation, to prevent discovery, so that possession is not necessarily an incident of receiving and concealing.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Conceal—Concealment; Receive.]

**3. Customs duties ⊕134—Knowledge by defendant liquor had been imported contrary to law held question for jury.**

Evidence that liquors received by defendant bore foreign labels, and did not have thereon any custom house marks or brands, and that defendant was found in a room with the goods, from some of which the foreign marks had been scraped off, *held* to make defendant's knowledge the goods were imported a question for the jury.

**4. Criminal law ⊕863(2)—Recharging jury, after they reported inability to agree, held not erroneous.**

Where there was only one issue of fact on which the jury could disagree, it was not error for the trial court, when they reported inability to agree, to express surprise, recharge them that the facts were for them, but that they must have due regard for their oaths and their duties, and instruct them as to the inferences of knowledge which could reasonably be drawn from the evidence, and warn them not to be influenced by sympathy or prejudice.

Emanuel Bookbinder was convicted of unlawful possession of intoxicating liquor, and of knowingly receiving and concealing intoxicating liquor imported contrary to law. On motion in arrest of judgment and for a new trial. Motions denied.

See, also, 278 Fed. 216; 281 Fed. 206.

John Robert Jones and Truman D. Wade, Asst. U. S. Attys., and George W. Coles, U. S. Atty., all of Philadelphia, Pa.

David Phillips and J. Washington Logue, both of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. The defendant was convicted upon an indictment containing two counts. The first count charged unlawful possession of intoxicating liquor for beverage purposes at premises occupied and used by the defendant as a restaurant in violation of the provisions of the National Prohibition Act (41 Stat. 305). The reasons filed, assigning error in connection with the charge under that count, have been withdrawn by the attorney for the defendant. The second count charged an offense under R. S. § 3082 (Comp. St. § 5785), in that the defendant willfully, unlawfully, fraudulently, and knowingly received and concealed intoxicating liquor, knowing the same to have been imported into the United States contrary to law from a foreign port, without a permit for such importation having been issued therefor, as provided in the National Prohibition Act and the regulations adopted pursuant thereto, without having been examined by a duly authorized official of the Treasury Department of the United States as provided by law, and without payment of the duty required by law to be paid upon the importation and bringing in of such merchandise.

At the conclusion of the government's evidence the district attorney was required to elect whether he would press for conviction upon the ground that the liquor alleged to have been received and concealed, and known to the defendant to have been imported contrary to law, was so imported contrary to the National Prohibition Act, or contrary to the customs laws, in view of the charge that the liquor was imported without the payment of duties. The district attorney elected to proceed upon the ground that the liquor received and concealed was liquor known to have been imported in violation of the National Prohibition Act, thus being confined to relying upon its being liquor for beverage purposes, and therefore not subject to payment of duty, as would be the case with liquor imported under a permit for nonbeverage purposes.

The liquor in question had been seized under a search warrant issued under the provisions of R. S. § 3066 (Comp. St. § 5769), which gives authority to customs officers who shall have cause to suspect a concealment of merchandise in any particular dwelling house, store, building, or other place to enter such house, store, or other place, upon a search warrant and search for such merchandise, and, if any shall be found, to seize and secure the same for trial. The validity of the search warrant was sustained by Judge Dickinson upon a motion to quash, in an opinion reported in 278 Fed. 216. Thereafter and before trial a motion to suppress the evidence consisting of the seized liquors was denied by the writer; it being held under the authority of Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647, that, as the liquor was seized under a valid search warrant, it could lawfully be used as evidence by the government in a prosecution for a different offense than that charged against the defendant in the affidavit upon

which the search warrant was issued. At the trial the objections of the defendant's counsel to the admission of evidence obtained through the execution of the search warrant were overruled in accordance with the previous rulings upon the motion to quash and the motion to suppress evidence. The alleged error based upon these rulings has been disposed of in the opinions previously filed, and requires no further discussion by this court.

[1] Upon the present motion in arrest of judgment upon the second count of the indictment, it is contended that the count does not set out an indictable offense, because it but duplicates the charge under the National Prohibition Act of possessing liquor set out in the first count, and because the offense charged under R. S. § 3082, is no longer in force and effect, because it is completely covered by the National Prohibition Act and therefore is impliedly repealed. Under R. S. § 3082, the necessary ingredients of the offense are (1) importation contrary to law; (2) receipt and concealment of such merchandise imported contrary to law; (3) knowledge on the part of the defendant that the merchandise was imported contrary to law. The phrase "contrary to law" is not confined in its application to customs laws, but refers to legal provisions other than those found in this section. Rogers v. United States, 180 Fed. 54, 103 C. C. A. 408, 31 L. R. A. (N. S.) 264; United States v. Chesbrough (D. C.) 176 Fed. 778; Estes v. United States, 227 Fed. 818, 142 C. C. A. 342; United States v. Claflin, Fed. Cas. No. 14,798; United States v. Thomas, Fed. Cas. No. 16,473.

[2] Under the National Prohibition Act the importation of intoxicating liquor for beverage purposes is prohibited, and nonbeverage liquors may only be imported under the authority of a permit. It follows that the section includes importation contrary to the National Prohibition Act, unless, as contended by the counsel for the defendant, the receiving and concealing of unlawfully imported intoxicating beverages is within the provisions of the National Prohibition Act providing against possession of intoxicating liquor. Section 3 of title 2 provides as follows:

"No person shall * * * possess any intoxicating liquor except as authorized in this act."

No specific penalty is provided for possession in violation of the Prohibition Act, and the penalty therefore comes under the general provisions of section 29, title 2, imposing a fine for a first offense of not more than $500 upon any person violating any of the provisions of the title, for which offense a specific penalty is not prescribed. If receiving and concealing is identical in its meaning with possessing, or if possession is inclusive of receiving and concealing, we must concede under the authority of United States v. Yuginovich, 256 U. S. 450, 41 Sup. Ct. 551, 65 L. Ed. 1043, that Congress did not intend to preserve, as to intoxicating liquors received and concealed with knowledge that they were imported contrary to the Volstead Act, the penalty prescribed in section 3082, in addition to the provision for punishment for possession made in the Volstead Act. In the above case the offenses under consideration were those created by section 3257, Rev. Stats. (Comp. St. § 5993), making it an offense for one engaged in the business of

281 F.—14

distilling spirits subject to internal revenue tax to defraud or attempt to defraud the United States of the tax on the said spirits, and section 35 of the Volstead Law, which imposes a penalty for any illegal manufacture or sale of a tax in double the amount now provided by law, with an additional penalty of $1,000 on manufacturers.

The National Prohibition Law prohibits importation, and imposes a penalty for importation; but the defendant is not charged with importation. He is charged with receiving and concealing, and, disregarding as surplusage, under the election of the district attorney, the charge that no duties were paid upon the importation, he is not charged with receiving and concealing contrary to laws which have been held to be repealed or superseded by the National Prohibition Act as inconsistent therewith.

To receive describes simply the act of taking. To conceal means to hide or withdraw from observation; to prevent the discovery of; to withhold knowledge of. One who possesses liquors may have received them, and he may be concealing them; but possession does not necessarily imply either receiving or concealing. In order to prove concealment, it is not necessary to prove possession, and concealment may be entirely separate and apart from possession. One who conceals a thing may have parted with possession in the very act of concealing. He may have concealed it in the possession of another; or he may have concealed it in such place as to be no longer in possession. Where Congress uses different language, it is presumed to intend a different meaning.

The National Prohibition Act contains no denunciation whatever of, and prescribes no penalty whatever for, receiving and concealing merchandise imported contrary to law after its importation, knowing it to have been imported contrary to law, but leaves the specification of that offense, with the penalty therefor, to section 3082 alone. As that statute alone prescribes the penalty for its commission, it was evidently neither repealed nor superseded by the National Prohibition Act.

Taking up the motion for a new trial, the errors assigned to the admission in evidence of what occurred upon the execution of the search warrant and of the liquors seized have been disposed of. The objections to the evidence concerning the presence of the liquor upon the wharf at Wildwood and its transportation to the defendant's premises are not tenable, in view of the testimony of Hertz of his arrangement with the defendant for its sale and delivery. I fail to discover error in the charge to the jury or in the rulings upon the requests for charge. It is urged, however, that the action of the court in charging the jury and sending them back for further deliberation, without request upon their part for further instructions, after they had reported their inability to agree, was prejudicial error. The direction to a jury, reporting that it is unable to agree, to return for further deliberation, is within the judicial discretion. 12 Cyc. 683. An abuse of discretion in this regard, which is prejudicial to the defendant, is, no doubt, ground for a new trial.

[3] At the close of the government's case the defendant did not go upon the stand, his counsel did not call any witnesses, and the case,

therefore, stood upon the government's evidence alone. The importation contrary to law was clearly established. The receipt of the liquor at the defendant's premises and its concealment were clearly established. The remaining element, knowledge on the part of the defendant that the liquor was imported contrary to law, was strongly supported by the evidence, and could have been the only point of difference among the jurors. The government's witness Hertz testified several times as to the defendant's knowledge, which testimony, on motion of defendant's counsel, was struck out upon the ground that such testimony was a mere conclusion of the witness. Hertz testified, however:

"Q. After it came there, what did you with respect to Bookbinder, if anything? A. Well, the only thing that I can recall about it is this: That I went over and saw Bookbinder, and I told him what I expected to see on the wharf, or expected in, rather.

"Q. Well, give us your conversation, will you, please? What did you tell him? A. I expect so many cases of this, and so many cases of that. Now, can you use any of them?"

There was evidence in the case to the effect that the liquor delivered was foreign liquor, that the boxes had foreign labels, that they had no custom house marks or brands upon them, and that they had no labels required under the regulations provided by law to show that it came in under a permit; evidence that the defendant at the time of seizure was discovered in the room containing the cases of liquor with the door locked, and that he was in a condition indicating physical exertion, that a scraper was found there, that some of the cases showed that the foreign marks on the boxes had been scraped, and shavings were lying about the floor. In this state of the evidence, the witness Hertz testified on cross-examination:

"A. He did not know where they were coming from."

And on re-examination:

"Q. Do you mean, by that, from what port? A. I mean by that he did not know where they were coming from, what port, or town, or anything. He was entirely in the dark on that. I was the one that tried to cover it up where my stuff came from.

"Q. But he did know they were foreign goods? A. He must have known. He couldn't have thought otherwise."

The question of knowledge was therefore for the jury under all the facts and circumstances of the case.

[4] In recharging the jury the court expressed surprise that they were unable to agree, instructed them that the facts were for them, but that, in considering the facts and arriving at a verdict, they must have due regard for their oaths as jurors and their duties as citizens. They were instructed as to the inferences of knowledge which could reasonably be drawn by them from evidence in the case. They were impartially warned not to be influenced by sympathy or prejudice, either for or against the defendant, or the National Prohibition Act. They were instructed that the facts were left entirely to them, and that the trial judge was not attempting to determine them for them.

In Simmons v. United States, 142 U. S. 148, at page 155, 12 Sup. Ct. 171, at page 172 (35 L. Ed. 968), Mr. Justice Gray stated:

"The only other exception argued is to the statement made by the judge to the second jury, in denying their request to be discharged without having agreed upon a verdict, that he regarded the testimony as convincing. But at the outset of his charge he had told them, in so many words, that the facts were to be decided by the jury, and not by the court; and it is so well settled, by a long series of decisions of this court, that the judge presiding at a trial, civil or criminal, in any court of the United States, is authorized, whenever he thinks it will assist the jury in arriving at a just conclusion, to express to them his opinion upon the questions of fact while he submits to their determination, that it is only necessary to refer to two or three recent cases in which the judge's opinion on matters of fact was quite as plainly and strongly expressed to the jury as in the case at bar. Vicksburg, etc., Railroad v. Putnam, 118 U. S. 545; United States v. Philadelphia & Reading Railroad, 123 U. S. 113; Lovejoy v. United States, 128 U. S. 171. Judgment affirmed."

See, also, Stokes v. United States (C. C. A.) 264 Fed. 18; Smith v. United States, 157 Fed. 721, at pages 731, 732, 85 C. C. A. 353.

Counsel for the defendant cites Foster v. United States, 188 Fed. 305, 110 C. C. A. 283, as authority to sustain his contention that the action of the court in further instructing the jury after they had reported their inability to agree was prejudicial. In that case, however, the circumstances differed materially from those in the present case. The trial judge expressed the opinion that the evidence showed the defendant guilty, at the same time cautioning them that they were not bound by the opinion of the court, and the Circuit Court of Appeals for the Fourth Circuit said in its opinion:

"Notwithstanding the trial judge may express an opinion as to the weight of evidence in civil cases, and as to the guilt of a prisoner in criminal cases, the greatest caution should be used in the exercise of this power, and the jury should be left free and untrammeled in the determination of questions of fact which are to be passed upon by them, and in no instance should the trial judge *express an opinion as to the guilt of the defendant* after the case has been submitted to the jury, and at a time when they have failed to agree as to their verdict."

In the case of Ching v. United States, 118 Fed. 538, 55 C. C. A. 304, which was also in the Fourth Circuit, a charge in many respects similar to that given in the present case, after the jury had reported they were unable to agree, was held to be free from error, following the authority of Simmons v. United States, above cited.

There being, in my opinion, no substantial error set out in the reasons in support of the motion in arrest of judgment, or the motion for a new trial, both motions are denied.