**KENNEDY v. UNITED STATES.**
## No. 5992.

Circuit Court of Appeals, Ninth Circuit.
May 26, 1930.

On Rehearing Nov. 17, 1930.

Molumby, Busha & Greenan and Slattery & Tighe, all of Great Falls, Mont., for appellant.

Wellington D. Rankin, U. S. Atty., Howard A. Johnson, and Arthur P. Acher, Asst. U. S. Attys., all of Helena, Mont.

Before DIETRICH and WILBUR, Circuit Judges, and NETERER, District Judge.

NETERER, District Judge.

From a judgment of conviction on a charge that defendant "did * * * unlawfully receive and conceal and facilitate the transportation and concealment of * * * about thirteen (13) cases. of Canadian whiskey, after its importation into the United States, * * * that said merchandise had been smuggled and clandestinely introduced into the United States, to wit, into the Collection District of Montana from the Dominion of Canada; defendant well knowing that the said merchandise had been imported and brought into the United States contrary to law, * * *" defendant appeals.

At the close of plaintiff's case appellant moved for a directed verdict of not guilty, on denial of which defendant rested. The testimony was given by the collector of customs, who testified, among other things, that it was his duty to collect duties on imported goods and prevent the smuggling of goods into the district; that prior to becoming collector he was adjutant general of Montana; that he had known the defendant at sight for four or five years and had some fifteen or twenty conversations with him prior to December 12, 1928; that during the last "two or three or four years" he .had seen him at Great Falls quite a few times, sometimes two or three times a day; that about 7:20 p. m. on the day in question he was standing on Third Avenue North, in Great Falls, and saw a Buick car coming west on First avenue, a car he had seen the defendant driving prior to that time; that the driver of the car was

Louis Anno, whom he had known something over a year; that he had arrested Anno one time prior; that from hearsay he knew that Anno had worked for defendant; that one time defendant stopped the witness on the street and told him "he got Louie a job out at the smelter and he was not working for him any longer"; that he never saw the defendant and Anno together after that conversation; that he noticed that the hind springs of the car, as it moved along Third street, "were low"; that he followed the car into "First Alley North * * * and I slowed down to see what he was going to do"; that the car was driven "past Brewer's Building and turned facing north back of the Brewer Glass Shop. As the lights of the car struck the big doors in this glass shop I recognized Kennedy opening the doors. This building, this glass shop, was in, extends out perhaps fifteen feet south from the main Paris Building. I stepped back of the corner of this building and stood there while the car was driven into the shop. Kennedy, in opening the door, backed up within arm's reach of me, and I waited until the car had driven into the shop, and the engine turned off, and I stepped past Walter, and I said, 'She looks kind of heavy to-night, Walter,' and he left there."

"Q. Did you put your hand on him? A. I reached out with my hand; I don't recall whether I touched him or not but I believe he was within arm's reach of me.

"Q. What did he do when you said that? A. He ran."

"Q. At a good speed? A. Pretty fast. I went on into the shop and stepped up on the right-hand side of the car and young Anno jumped out of the car and ran out of the door. I called at him to halt, and he put on another notch of speed and ran. I examined the car and found thirteen cases of assorted cases of whiskey in the car. * * *

"Q. What is that liquor—beer, whiskey or wine? A. Whiskey.

"Q. Will you explain these labels to the jury,—are they Canadian labels? A. Yes, sir.

"Q. All of them? A. No, they are British labels. This one is Scotch.

"Q. Some of them Canadian? A. No, they are all English and Scotch. * * *

"Q. What did you do with the liquor? A. I put it under seizure and brought it over and put it in the vault.

"Q. Any duty placed on this? A. No, sir.

"Q. It came in contrary to law? A. Yes, sir.

"Q. It can't come in legally? A. Not without a permit.

"Q. And no permit was issued? A. No, sir.

"Q. You were in charge of that, the permit end, if there could be any? A. I was in charge. The permit would come to me."

On cross-examination, among other things, he was asked:

"Q. Was anybody else at the garage there? What is this place? A. It is a shop where they fix bodies and glass. Mostly replace glass in cars.

"Q. Was anybody else there? A. Yes, sir.

"Q. Who else was there? A. Brewer, the proprietor.

"Q. Did he remain there? A. Yes, sir."

There is no evidence that the liquor in the auto was Canadian liquor, except, as contended by plaintiff, the proximity of Great Falls to the Canadian boundary line, about 100 miles in direct line, or that it was imported, except that no permit was issued and it bore English and Scotch labels. Upon the charge it became necessary to prove that the whisky was imported from Canada. Mr. Justice Brewer, for the court, in Potter v. United States, 155 U. S. 438, 15 S. Ct. 144, 146, 39 L. Ed. 214, said: "It is generally true, as claimed, that, where an indictment is unnecessarily descriptive, even the unnecessary description must be proved as laid." In the instant case, if the country from which the whisky was imported had not been given in the indictment, it might have been required by bill of particulars, but being given the proof became necessary. The defendant, under this charge, had a right to rely that it came from the northern exposure, and not from the east, west, or south. Circumstantial evidence, of itself, is sufficient to convict if the circumstances are consistent with each other, consistent with the guilt of the party charged, inconsistent with his innocence and inconsistent with every other reasonable hypothesis except that of guilt. The only circumstances disclosed by the evidence, connecting the defendant with the liquor, is the statement of the collector that he had seen the defendant at a prior time driving the particular car in question, and that Anno, the driver, had at one time been employed by the defendant, and that the defendant opened the garage doors of Mr. Brewer's garage as the automobile approached, and, when the

witness stated "she is heavily loaded," escaped; and the only evidence of importation from Canada is that the collector had not issued or received a permit permitting importation, and that it was labeled with English and Scotch labels. There is no evidence of any circumstances to indicate that the car had been seen near his boundary, or any evidence of any sort that the car had been at the border. The labels, even though English and Scotch, are no doubt a circumstance to be considered with other circumstances bearing upon the source of the liquor, but the court may not take judicial notice of the fact that the labels are what they purport to be, not spurious and used for deceptive purposes; nor can the court assume that the liquor contained in the labeled flasks was, by reason of that, foreign production, not domestic or illegal distillation. If the liquor had been found immediately this side of the border, in the condition labeled as disclosed, or if any circumstance tending to show the automobile had been in Canada, either by observation or tracks of the car, or any circumstance indicating its presence across or at the border, such circumstance, together with the circumstance of the labels and the conduct of the parties, might be sufficient to carry the case to the jury to determine the fact from all of the disclosed circumstances. There is no circumstance as to when or where this liquor was imported. There is no circumstance that the whisky was imported, if at all, from Canada. The burden of unlawful importation is on the government. Sherman v. United States (C. C. A.) 268 F. 516.

 While flight in the presence of crime is a circumstance to be considered, since the dawn it is recorded that "the wicked fleeth when no one pursueth," but, as said by Mr. Justice Brown in Alberty v. United States, 162 U. S. 499, 16 S. Ct. 864, 868, 40 L. Ed. 1051: "It is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime through fear of being apprehended as the guilty parties, or from an unwillingness to appear as witnesses." In the instant case, the defendant Kennedy may have been guilty of an offense under the National Prohibition Law, and because of that fled, and innocent of the crime of importation. Guilt of possession and transportation under the National Prohibition Act (27 USCA) would not presuppose guilt of importation.

The plaintiff contends that possession of liquor in the defendant is sustained by circumstances disclosed, and, such fact being

shown, it was incumbent upon the defendant to explain the presence of the liquor, and cites in support United States v. Bookbinder (D. C.) 281 F. 207, 211, and Wong Lung Sing v. United States (C. C. A.) 3 F.(2d) 780. In the first case, there was evidence that the boxes in which the liquor was contained had foreign labels, had no custom house marks or brands upon them, no labels required under the regulations provided by law to show that it came in under a permit; the defendant, at the time of the seizure, was in the room containing the liquor with the door locked, had the appearance of physical exertion, and a scraper was in the room, and some of the cases showed that the foreign marks on the boxes had been scraped and shavings were lying about the floor. The court properly held the circumstances sufficient to take the case to the jury as to whether defendant could reasonably be *assumed to have knowledge that the liquor was imported.* In Wong Lung Sing v. U. S., supra, the court simply applied the provisions of law providing that possession of narcotics permits inference that possession is unlawful, and the burden is upon the party charged to explain. These cases have no application here. The court is cited to no authority declaring that the possession of liquor is prima facie evidence of unlawful importation. Unlawful possession of narcotics is prima facie evidence of unlawful importation, made so by the narcotic act, but has no application to the issue before the court. The motion for new trial should have been granted.

The judgment is reversed, and case remanded.

### On Petition for Rehearing.

PER CURIAM.

██ The indictment in this case charged that the appellant fraudulently, knowingly, and unlawfully received and concealed and facilitated the transportation and concealment of certain cases of Canadian whisky after their importation into the United States, contrary to law, in that such merchandise had been smuggled and clandestinely introduced into the United States, and into the Collection District of Montana, from the Dominion of Canada. In a petition for rehearing filed by the appellee, there seems to be some contention that this court, in its opinion, held that it was incumbent on the government to prove that the intoxicating liquor was introduced into the United States from the Dominion of Canada, as charged in the indictment; whereas, the government contends that this aver-

ment in the indictment was surplusage and that it was competent to prove importation from any other country. For reasons hereinafter stated, the question whether it was incumbent on the government to prove that the liquor involved was Canadian whisky and was imported into the United States from the Dominion of Canada, or whether these averments in the indictment should be rejected as surplusage, we need not inquire; .and the question will be left open for future consideration. We adhere to the views expressed in our former opinion, that there was no substantial evidence tending to prove that the liquor was imported from any source, aside from the labels found on the bóttles; and we think it is well settled that such labels, when found on containers of intoxicating liquor, have little or no tendency to prove the kind or quality of the liquor, or the place of manufacture, in the absence of evidence tending to prove that the labels are genuine. United States v. One Packard Sedan (D. C.) 14 F. (2d) 874; United States v. Packard Sedan (D. C.) 23 F.(2d) 865. As said by the Circuit Court of Appeals for the Eighth Circuit, in Bronstein v. United States, 17 F.(2d) 12, 14:

"The liquor, in all probability, resembled gin as closely as it did any recognized preprohibition liquor. Most modern hard liquors, aside from their flavor, come from the same still, and it is a matter of common knowledge that a few drops of the oil of juniper constitutes these days the difference between beverage alcohol and so-called gin."

In the absence of evidence of importation, there is, of course, no room for presumptions of any kind.

The judgment is reversed and the case remanded, as heretofore ordered.