### ESTES v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. November 15, 1915.)

No. 4451.

1. CUSTOMS DUTIES ⊙⟳125—CONCEALMENT OF PROPERTY IMPORTED CONTRARY TO LAW.

   Rev. St. § 3082 (Comp. St. 1913, § 5785), provides that if any person shall knowingly import any merchandise contrary to law, or conceal or facilitate the transportation or concealment of any such merchandise, he shall be punished as therein provided. Section 3100 (section 5812) provides that all merchandise imported into the United States from any contiguous foreign country shall be unladen and inspected by a customs officer at the first port of entry where it shall arrive. *Held*, that cattle brought into the United States from Mexico without complying with section 3100 were imported contrary to law, within section 3082, though the cattle were not dutiable.

   [Ed. Note.—For other cases, see Customs Duties, Cent. Dig. § 266; Dec. Dig. ⊙⟳125.]

2. ANIMALS ⊙⟳29—QUARANTINE REGULATIONS.

   Act Feb. 2, 1903, c. 349, § 2, 32 Stat. 792 (Comp. St. 1913, § 8699), provides that the Secretary of Agriculture shall have authority to make proper regulations to prevent the introduction of contagious or communicable diseases of animals from a foreign country into the United States, and section 3 (section 8700) provides that any person violating that act or the regulations in pursuance thereof shall be guilty of a misdemeanor. Act Aug. 30, 1890, c. 839, 26 Stat. 416, provides that the Secretary of Agriculture may place in quarantine all neat cattle, etc., imported into the United States at such ports as he may designate for such purpose, and that the importation of all animals described in that act into any port except those designated by him as quarantine stations is thereby prohibited. The Secretary of Agriculture promulgated certain regulations requiring cattle subject to quarantine and inspection to be entered through certain customs stations, and requiring animals subject to inspection, including all cattle imported from Mexico, to be inspected at the port of entry. *Held*, that the statute gave the Secretary of Agriculture full authority to make such regulations.

   [Ed. Note.—For other cases, see Animals, Cent. Dig. § 79; Dec. Dig. ⊙⟳29.]

3. CUSTOMS DUTIES ⊙⟳134—CONCEALMENT OF PROPERTY IMPORTED CONTRARY TO LAW.

   An indictment for concealing and facilitating the transportation and concealment of cattle imported without inspection by an inspector of the Bureau of Animal Industry properly charged that the animals were imported "contrary to law," without such inspection, so as to bring the charge within the language of Rev. St. § 3082 (Comp. St. 1913, § 5785).

   [Ed. Note.—For other cases, see Customs Duties, Cent. Dig. §§ 336–339; Dec. Dig. ⊙⟳134.]

⊙⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of New Mexico; W. H. Pope, Judge.

Phillip Estes was convicted of an offense, and he brings error. Affirmed.

Edward A. Mann, of Albuquerque, N. M. (R. F. Hamilton, of Deming, N. M., on the brief), for plaintiff in error.

Summers Burkhart, U. S. Atty., of Albuquerque, N. M.

Before CARLAND, Circuit Judge, and AMIDON and VAN VALKENBURGH, District Judges.

CARLAND, Circuit Judge. Estes was jointly indicted, tried, and convicted with one Faustino Holguin for the violation of section 3082, R. S. U. S. (Comp. St. 1913, § 5785), which reads as follows:

"If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, *or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported contrary to law,* such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding five thousand dollars nor less than fifty dollars, or be imprisoned for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury."

Having been sentenced to the penitentiary, he brings the case here, assigning error.

The indictment charged in substance that the defendants on the 29th day of March, 1914, at the county of Luna, and district of New Mexico, did receive and conceal and did facilitate the transportation and concealment of certain cattle, which were described, and which had theretofore been fraudulently and clandestinely imported and brought into the United States from the republic of Mexico contrary to law; that is to say, without the same being invoiced or entry thereof being made with any collector of customs of the United States, and without declaration thereof being made to any proper revenue officer of the United States, and without the same having been inspected by an inspector of the Bureau of Animal Industry of the United States, knowing the same to have been so imported and brought into the United States from the republic of Mexico. After a witness had been sworn for the prosecution and a question asked, counsel for the defendant objected to the introduction of any further evidence on the ground that the indictment failed to state any crime or offense punishable by the laws of the United States. Such a motion is unknown to the procedure in criminal cases in the courts of the United States. In United States v. Gooding, 12 Wheat. 461, 6 L. Ed. 693, Justice Story, in delivering the opinion of the Supreme Court, said:

"Undoubtedly, according to the regular course of practice, objections to the form and sufficiency of an indictment ought to be discussed, upon a motion to quash the indictment, which may be granted or refused in the discretion of the court, or upon demurrer to the indictment, or upon a motion in arrest of judgment, which are matters of right. The defendant has no right

to insist that such objections should be discussed or decided, during the trial of the facts by the jury. It would be very inconvenient and embarrassing, to allow a discussion of such topics, during the progress of the cause before the jury, and introduce much confusion into the administration of public justice. But, we think, it is not wholly incompetent for the court to entertain such questions, during the trial, in the exercise of a sound discretion. It should, however, be rarely done, and only under circumstances of an extraordinary nature."

The trial court in its discretion, however, entertained the motion and denied it. This ruling is assigned as error. As the question as to whether the indictment sustains the judgment might probably be raised here for the first time, we will consider the error assigned.

[1] It is contended that as the cattle were not dutiable, and they were not, it was not necessary to enter them for import at a port of entry; but under section 3100, R. S. U. S. (Comp. St. 1913, § 5812), all articles or merchandise imported into the United States from a contiguous foreign country must be unladen in the presence of, and be inspected by, an inspector or other officer of the customs. In other words, an importer cannot determine for himself that articles which he desires to import are not dutiable and bring the same into this country at any place he shall determine. All articles, whether dutiable or not, must be properly declared and entered at the custom house and there be inspected by the proper officer. To bring property into this country from a contiguous foreign country without complying with the provisions of section 3100, R. S. U. S., is to bring it into this country contrary to law.

[2, 3] It is next claimed that there is no law within the meaning of section 3082, supra, which requires the cattle mentioned in the indictment to be inspected by an inspector of the Bureau of Animal Industry of the United States. Section 2 of the act of Congress approved February 2, 1903 (32 Stat. 792, c. 349 [Comp. St. 1913, § 8699]), reads as follows:

"That the Secretary of Agriculture shall have authority to make such regulations and take such measures as he may deem proper to prevent the introduction or dissemination of the contagion of any contagious, infectious, or communicable disease of animals from a foreign country into the United States * * * whenever in his judgment such action is advisable in order to guard against the introduction or spread of such contagion."

Under the authority of this section and also of the act of Congress approved August 30, 1890 (26 Stat. 416, c. 839), the Secretary of Agriculture has promulgated certain regulations as follows:

"Ports of Import and Quarantine and Inspection Stations.

"Regulation 1. With the approval of the Secretary of the Treasury, the following named ports, subports, and custom stations are hereby designated as quarantine stations, and all horses, cattle, sheep, and other ruminants, and swine imported into the United States and which are subject to both quarantine and inspection must be entered through said stations, viz.: * * * Along the boundary line between the United States and Mexico: Campo and Calexico, Cal.; Nogales, Ariz.; El Paso, Eagle Pass, Laredo, Rio Grande City, Edinburgh, and Brownsville, Tex."

"Regulation 14. All animals imported into the United States and which are subject to inspection shall be carefully inspected by an inspector of the Bureau of Animal Industry, and all animals found to be free from disease and

not to have been exposed to any contagious disease shall be admitted into the United States, subject to the provisions for quarantine, as required by regulation 9, except as otherwise provided."

"Regulation 48. All cattle imported into the United States from the republic of Mexico must be inspected at the port of entry by an inspector of the Bureau of Animal Industry, and found free from disease."

Section 3 of the act of Congress approved February 2, 1903 (Comp. St. 1913, § 8700), above mentioned, provides as follows:

"That any person, company, or corporation knowingly violating the provisions of this act or the orders or regulations made in pursuance thereof shall be guilty of a misdemeanor, and on conviction shall be punished by a fine of not less than one hundred dollars nor more than one thousand dollars, or by imprisonment not more than one year, or by both such fine and imprisonment."

It thus appears that the Secretary of Agriculture had full authority to make the above regulations, and that these regulations required that horses, cattle, sheep, and other ruminants, and swine imported into the United States, and which are subject to both quarantine and inspection, must be entered at the ports of entry specified in regulation 1. Regulations 14 and 48 provide for the inspection by an inspector of the Bureau of Animal Industry of all such animals.

The case of United States v. Eaton, 144 U. S. 677, 12 Sup. Ct. 764, 36 L. Ed. 591, is cited in support of defendant's contention. In this case it appeared that a regulation made by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury under section 20 of the act of August 2, 1886 (24 Stat. 209, c. 840 [Comp. St. 1913, § 6232]), in relation to oleomargarine, required wholesale dealers to keep a book and make a monthly return showing certain prescribed matters, and it was decided that a wholesale dealer in the article mentioned who fails to comply with such regulation is not liable to the penalty imposed by section 18 of the act (section 6230), because he does not omit or fail to do a thing required by law in the carrying on or conducting of his business. The Supreme Court decided that, if Congress had intended that a violation of the regulations promulgated by the Commissioner of Internal Revenue should be visited by the penalty imposed by section 18 of the act, it would have said so. But in the case of United States v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563, the ruling in the case of United States v. Eaton is explained, and it is there decided that a conviction for violating the regulations established by the Secretary of Agriculture, regulating the use of forest reservations for grazing and other lawful purposes, should be sustained because the act of Congress which authorized the Secretary to establish the regulations also provided that any violation of the provisions of the act or of such rules and regulations should be punished as provided in section 5388, R. S. U. S., as amended.

The defendants in the case at bar were not indicted for violating the regulations of the Secretary of Agriculture; but as these regulations were fully authorized by law, and their violation made punishable by law (section 3, supra), it must be held, we think, that it was proper to allege in the indictment that the cattle in question had theretofore been imported and brought into the United States from the

republic of Mexico contrary to law, as specified in the indictment, so as to bring the charge within the language of section 3082, above mentioned. We therefore conclude that the court did not err in overruling the motion, which attacked the indictment.

There was a request at the close of all the testimony that the court direct a verdict for the defendants, for the reason that there was an entire failure of proof of the material allegations of the indictment. We have read the evidence in the record with care and are satisfied that there was sufficient evidence to go to the jury that the cattle were brought from the republic of Mexico into the United States without being invoiced or entry thereof made with any collector of customs, and without declaration thereof being made to any proper revenue officer, and without being inspected by an inspector of the Bureau of Animal Industry. The last clause of section 3082 provides that whenever on trial for a violation of this section the defendant is shown to have, or to have had, possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction unless the defendant shall explain the possession to the satisfaction of the jury. There was evidence which positively identified Estes and his codefendant Holguin as the men who were in possession of the cattle in Luna county on March 30, 1913.

We have carefully considered the errors assigned in regard to the charge delivered by the court to the jury. The charge is not subject to the criticisms leveled against it, and we see no error therein. The court did not charge the jury that the unlawful importation of the cattle was proved by showing that the defendant had been in possession of the same. It particularly explained to the jury that, if they believed that the cattle had theretofore been unlawfully imported as charged in the indictment, then possession under the statute was sufficient to authorize conviction, unless the defendant should explain the possession to the satisfaction of the jury.

We are also of the opinion that the remarks of the United States Attorney in his address to the jury simply stated what the provisions of section 3082 were in regard to the force and effect of possession by the defendants of the cattle in question and that his comments, especially in view of the charge of the court, were not a violation of the act of March 16, 1878 (20 Stat. 30, c. 37 [Comp. St. 1913; § 1465]).

We see no error in the record, and the judgment below is therefore affirmed.